# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### JOHNSTOWN DIVISION

ANTHONY NGUIEN,

    Plaintiff,

  v.

PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)

Civil Action No. 3: 18-cv-0209

Chief United States Magistrate Judge
Cynthia Reed Eddy

## MEMORANDUM OPINION[1]

Pending before the Court are two motions filed pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure:  (i) Motion to Dismiss Plaintiff's Third Amended Complaint filed by

the DOC Defendants (ECF No. 200) and (ii) Partial Motion to Dismiss Plaintiff's Third

Amended Complaint filed by the Medical Defendants. (ECF No. 203).   Plaintiff responded in

opposition to both.  (ECF Nos. 208 and 215).

After carefully considering the motions and briefs, given the standards governing motions

to dismiss set forth by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S.

544 (2007), and *Ashcroft v. Iqbal*, 556 U.S.  662, 668 (2009), and as articulated in United States

Court of Appeals Third Circuit precedent, *see, e.g.*, *Connelly v.  Lane Const. Corp.*, 809 F.3d

780, 790 (3d Cir. 2016), and for the following reasons, the motions will be granted in part and

denied in part.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties have voluntarily
consented to have a United States Magistrate Judge conduct proceedings in this case, including
trial and entry of judgment. *See* ECF Nos. 23, 35, and 89.

## A.    PROCEDURAL HISTORY

Plaintiff, Anthony Nguien (Nguien), is a Pennsylvania state prisoner confined at SCI-Somerset.   This case was initiated on September 17, 2018, when Nguien filed a civil rights complaint and a motion for leave to proceed *in forma pauperis* (IFP) in the United States District Court for the Middle District of Pennsylvania.  (ECF Nos. 1 and 2).   On October 16, 2018, the case was transferred to the Western District of Pennsylvania. (ECF No. 11).   After a brief delay to allow Nguien an opportunity to provide the Court with the requisite financial information, his motion to proceed IFP was granted and his Complaint filed on November 19, 2018. (ECF No. 15 and 16).

The original complaint asserted that Nguien was being served food items to which he had severe allergic reactions, named only the Pennsylvania Department of Corrections (DOC), and brought the claims only under Title II of the Americans With Disabilities Act (ADA) and § 504 of Rehabilitation Act (RA).  The DOC moved to dismiss, and in response, Nguien sought and was granted leave to file an Amended Complaint.  He then filed an Amended Complaint which considerably expanded the scope of his allegations, by adding more than two dozen additional defendants, including numerous new DOC defendants and the Medical Defendants, and added various constitutional claims pursuant to 42 U.S.C. § 1983.  (ECF No. 59).  Defendants moved to dismiss the Amended Complaint (ECF Nos. 75, 100, and 116).  Before the motions were fully briefed, Nguien sought leave to amend once again, which was granted, and he filed a Second Amended Complaint.  (ECF No. 118).  Defendants again moved to dismiss.  After conducting a status conference with all parties, the Court administratively closed and stayed the case while the Department of Corrections investigated Nguien's allegations.  On April 19, 2020, when it became apparent that the case could not be resolved, the Court reopened the case, lifted the stay,

and directed the U.S. Marshal to serve the Second Amended Complaint upon the new defendants.  Defendants then again moved to dismiss, to which Nguien responded by filing a Third Amended Complaint on December 7, 2020. (ECF No. 197).  The Third Amended Complaint supersedes all previously filed complaints and remains Nguien's operative pleading. *See Garrett v. Wexford Health,* 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

The core allegation of the Third Amended Complaint  (TAC) is that Nguien suffers from various food allergies and that on numerous occasions he has been provided food trays that contain these foods, causing severe allergic reactions which have led to the need for emergency medical treatment.[2] The TAC consists of over 200 paragraphs and spans approximately 127 pages, inclusive of exhibits, and alleges the following federal and state claims:  Eighth Amendment - condition of confinement (Count 1), Eighth Amendment – failure to intervene (Count 2), Eighth Amendment – deliberate indifference (Count 3); Fourteenth Amendment – due process (Count 4), Eighth Amendment – failure to train/supervise (Count 5), Intentional Infliction of Emotional Distress (Count 6); "Monell" claims  (Count 7); claims under the ADA (Count 8), claims under the RA (Count 9), and Breach of Contract (Count 10). (ECF No. 197). Named in the TAC are twenty-six defendants, including DOC officials and staff members, and the contract medical provider and its employees.  As relief, Nguien seeks declaratory judgment,

---

[2]      The background facts are taken from the Third Amended Complaint. (ECF No. 197). Because the case is now before the Court on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the amended complaint and all reasonable inferences that can be drawn from it. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).  In addition, the Court views all well pleaded factual averments and reasonable inferences in the light most favorable to the non-moving party.

compensatory and punitive damages, and injunctive relief. (ECF No. 197).  The multi-faceted TAC has, in turn, inspired multi-faceted motions to dismiss.  Each motion challenges Nguien's claims on a host of grounds.  The motions will be addressed in turn.

**B.     ANALYSIS**

  1.     **Motion to Dismiss filed by the DOC Defendants[3]**

    a. <u>Section 1983 claims</u>

*i.  Official Capacity Claims*

The DOC Defendants seek to have all claims for <u>monetary damages</u> against them in their official capacities be dismissed as a matter of law under the Eleventh Amendment.  At all times relevant to this lawsuit, the DOC Defendants were employees or officials employed by the Pennsylvania Department of Corrections.  As a result, the Court agrees with the DOC Defendants, that to the extent that Nguien has named Defendants in their official capacities and is seeking monetary damages against them, such claims are barred by the Eleventh Amendment. *See, e.g.*, *Braun v. State Correctional Inst. at Somerset*, No. 2:13-cv-1102, 2010 WL 10398, *5– 6 (W.D.Pa. June 20, 2010) ("a section 1983 action against a state official in his official capacity is not a suit against the person but it is a suit against itself and as such, the action is barred by the Eleventh Amendment.").

The Court notes that there has, however, been a limited exception read into the Eleventh Amendment for actions seeking prospective injunctive relief under *Ex Parte Young*, 209 U.S.

---

[3]     The DOC Defendants are identified James Cosimato, Margaret Gordon, Gumby, Melissa Hainsworth, Hillgross, Brian Hyde, Allen G. Joseph, Jane LNU, Justin LNU, Laurel LNU, Kerri Moore, Pennsylvania Department of Corrections, Gerald Puskar, Christie Schenk, Joseph Silva, Eric Tice, Tipton, Dorina Varner, Amanda West, John Wetzel, and Whitmore.  These Defendants are named in  their official and individual capacities.

762, 776 (E.D. Pa. 2004).  Thus, Nguien may seek prospective injunctive relief against the DOC Defendants, in their official capacities, and monetary damages against the DOC Defendants, in their individual capacities.

   ii.  *Lack of Personal Involvement with Respect to Defendants Wetzel, Hainsworth, Tice, Hyde, Moore, Schenk, West, Varner, and Joseph*

The United States Court of Appeals for the Third Circuit has explained that there are two theories of supervisory liability in a Section 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations. *Santiago v. Warmister Township*, 629 F.3d 121, 128-29 n.4 (3d Cir. 2010).

First, as to Defendant Wetzel, the Secretary of the Department of Corrections, the TAC contends that he "was in charge with handling policy, care, custody, and control of all persons confined within the PaDoc."  TAC, ¶ 7.  The TAC, however, is void of any factual allegation that Defendant Wetzel established or maintained a policy, practice, or custom which directly caused constitutional harm to Nguien or that Defendant Wetzel participated in violating Nguien's rights or had knowledge or acquiesced in his subordinates' alleged violations.  As a result, the Court agrees with the DOC Defendants that Nguien's contention of Wetzel's personal involvement in any purported constitutional deprivation is not "plausible on its face."  *See Iqbal*, 556 U.S. at 678 (*quoting  Twombly,* 550 U.S. at 570).  For these reasons, the DOC Defendants' motion to dismiss Nguien's claims against Defendant Wetzel will be granted and Defendant Wetzel will be dismissed from this lawsuit.

The DOC Defendants next assert that Nguien has insufficiently alleged the personal involvement of Defendants Moore, Schenk, West, Varner, and Joseph in any purported constitutional deprivation.  These five defendants are Grievance Coordinators and it is clear from the allegations of the TAC that Nguien is seeking to hold these defendants liable solely based on their role in the inmate grievance process. Involvement in the grievance process, however, does not necessarily establish the actual knowledge necessary for personal involvement for a § 1983 claim.   Accordingly, the DOC Defendants' motion to dismiss Nguien's claims against Moore, Schenk, West, Varner, and Joseph will be granted.

But the issue is not so clear with respect to Defendants Hainsworth, Tice, and Hyde.  As will be explained below, Nguien contends that he repeatedly informed these three defendants through his written grievances[4] that he was continuing to be served a diet not in compliance with his dietary restrictions and despite these notifications, and Hainsworth, Tice, and Hyde ignored his repeated requests for assistance.  The grievances with which Hainsworth, Tice, and Hyde were presented were intended to correct an ongoing constitutional violation, not merely the denial of a grievance brought to address a discrete, past violation.  For these reasons, the Court finds that Nguien has sufficiently alleged in the TAC that he was subjected to ongoing constitutional deprivations and that Defendants Hainsworth, Tice, and Hyde had personal knowledge of these purported constitutional violations.  Accordingly, the DOC Defendants' motion to dismiss Nguien's claims against Hainsworth, Tice, and Hyde based on lack of personal knowledge will be denied.

---

[4]     The DOC Defendants assert that Hyde's actions were limited to responding to an inmate's requests to staff.  (ECF No. 201 at 6).  Nguien responds that Hyde also responded to grievances.  (ECF No. 208 at 14). Through discovery, the extent of Hyde's involvement, or lack thereof, will be flushed out.

iii.  *Eighth Amendment Claims – Counts 1, 2, 3, and 5*

The heart of this litigation is that Nguien contends that the DOC Defendants failed to provide him with a medically approved diet tray on numerous occasions.  In Count 1 of the TAC, Nguien generally asserts that the DOC Defendants deprived him "of his daily basic human needs (Food) and disability accommodations."  TAC, at ¶ 168.  In Count 2, he claims DOC Defendants Tice, Hyde, Hainsworth, and the Department of Corrections failed "to intervene once they [were] informed of the risk of harm to [Nguien's] health and safety if left unattended or accommodated."[5]  In Count 3, he claims that all DOC Defendants were deliberately indifferent to his medical needs; and in Count 5, he claims the DOC Defendants are liable under a theory of failure to train / supervise.  The DOC Defendants seek to have each of these claims dismissed.

In essence, Nguien is alleging that Defendants violated the Eighth Amendment because they were deliberately indifferent to his serious medical needs by not providing him with medically approved diet trays. To state a claim for deliberate indifference under the Eighth Amendment, a plaintiff must allege two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. *Gamble v. Estelle*, 429 U.S. 97 (1976). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a

---

[5]      DOC Defendants Wetzel, Varner, West, Joseph, Moore, and Schenk are also named in Counts 2, 3, and 5.  However, based on the Court's dismissal of these six defendants based on lack of personal involvement, the Court need not address these claims.  The Court notes that in Nguien's response to the Medical Defendants' motion to dismiss, he states that "defendants Mr. Hyde, Doctor Delisma, Mr. Kauffman, Roxanne inter alia should be added to [Count 2]."  Pl's Resp. at 3, n.1.  Nguien cannot add additional defendants by requesting this in his response. Rather, he must seek leave of court to file a motion to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied,* 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

For purpose of this Memorandum Opinion <u>only</u>, the Court finds that Nguien has met the threshold showing that he suffers from a serious medical need.  The question remains whether the DOC Defendants acted with a sufficiently culpable state of mind which rises to the level of deliberate indifference.  The facts alleged in the TAC and the plausible inferences from it preclude dismissal of Counts 1, 2, and 3 at this early stage of the litigation.[6]

The same, though, cannot be said of the failure-to-train allegations in Count 5.   To establish liability on a failure to train theory, a plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001) (*citing City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Here, the TAC is void of any allegations to establish liability

---

[6]     The DOC Defendants state that they have continued to work with Nguien and in support cite to documents filed at ECF Nos. 136 and 142.  However because the Court is ruling on a motion to dismiss, the Court is not able to rely on those documents without converting the motion to dismiss into a motion for summary judgment, which it has not done.

against the DOC Defendants based on failure to properly train or supervise DOC employees about their responsibilities in providing medically approved diet trays.  Nguien has identified no specific training or supervision that was not provided and he fails to allege that any similar conduct has occurred in the past so that the DOC Defendants should have been aware that an unreasonable risk of harm existed.

For all these reasons, DOC Defendants' motion to dismiss Counts 1, 2, and 3 will be denied.  However, the motion will be granted as to Count 5.

### iv. *Due Process Claim – Count 4*

Count 4 of the TAC states in its entirety:

> Defendants Pennsylvania Department of Corrections and Correct Care Solutions violated Petitioner's (sic) right to Due Process by failing to acknowledge the severity of his serious medical needs for testing, a therapeutic diet specifically tailored to his food allergy needs, accommodations for his disability, and inter alia.

> As a result of these Constitutional violations, Petitioner suffered multiple injuries and damages described above.

TAC, ¶¶ 178 – 179.

To the extent that Nguien is asserting a substantive due process claim, based on the same conduct that supports his claim under the Eighth Amendment, that claim is barred by the explicit source doctrine, which provides that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *U.S. v. Lanier*, 52 U.S. 259, 272 n.7 (1977).  *See also Albright v. Oliver*, 510 U.S. 266 (1994) (plurality), *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), *Graham v. Connor,* 490 U.S. 386, 395 (1989), and their progeny, all of which prohibit a substantive due process claim

under the Fourteenth Amendment where an explicit standard from another amendment covers the factual situation. Therefore, any substantive due process claim is barred by the explicit source doctrine. Nor has Nguien asserted a deprivation of a protected liberty or property interest to state a procedural due process claim.

Further, to the extent Nguien is asserting a due process claim against the Department of Corrections and it officials and employees in their official capacities, such a claim fails as a matter of law. "[N]either a state nor its officials acting in their official capacities are 'persons' under 42 U.S.C. § 1983." *Will v. Michigan*, 41 U.S 58, 71 (1989). The DOC is an agency of the state, 71 P.S. § 310-1, and as such is not a person under §1983 and is immune from suit.

For these reasons, DOC Defendants' motion to dismiss Count 4 will be granted.

v. <em>Count Seven – Monell Claim</em>

The DOC Defendants argue that Nguien's claim under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), against the Department of Corrections, is not cognizable as the Department of Corrections is a state agency. The DOC Defendants are correct. "*Monell* stands for the proposition that local governments are not liable under § 1983 for the acts of their employees unless those acts were taken pursuant to a policy or custom of the municipality." *Sims v. City of Phila.*, 552 Fed. App'x 175, 177 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 694). "*Monell* was 'limited to local government units which are not considered part of the State for Eleventh Amendment purposes. . . . " *Quern v. Jordan*, 440 U.S. 332, 358 (1979) (quoting *Monell*, 436 U.S. at 690 n.54). For this reason, the DOC Defendants' motion to dismiss Nguien's claims under *Monell* against the Department of Corrections will be granted.

vi. *Leave to Amend*

In civil rights cases, leave to amend generally should be granted sua sponte, even if the plaintiff does not affirmatively seek leave to amend. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251–52 (3d Cir .2007). But leave to amend may be denied if further amendment of the complaint would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 ("Among the grounds that justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility.")). Here, presently at issue is Nguien's Third Amended Complaint. Each of his prior pleadings was met with motions to dismiss raising similar arguments, but Nguien remains unable to successfully plead causes of action. The Court finds that leave to amend Nguien's § 1983 claims would be futile and leave to amend the complaint a fourth time will not be granted. *See Shane,* 213 F.3d at 115.

b.   <u>ADA and Rehabilitation Act Claims</u>

In Counts 8 and 9 of the TAC, Nguien states that the Department of Corrections has violated his rights under the ADA and the RA as he is "an individual with digestive problems, mobility problems, asthma problems and bowel movement problems which qualified him as an individual with Disabilities under the Americans with Disabilities Act."  TAC,¶ 192.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities by a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under § 504 of the RA,

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

To state a claim under either statute, a plaintiff must prove that he (1) is disabled, (2) is otherwise qualified for the services, programs, or activities sought or would be qualified if the defendant had made reasonable modifications to the services, programs, or activities, and (3) was discriminated against solely on the basis of his disability. *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) (citing 42 U.S.C. § 12132).  Additionally, "§ 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination on the basis of disability by programs that receive federal funds." *P.P. v. W. Chester Area Sch. Dist.,* 585 F.3d 727, 730 (3d Cir. 2009).

Nguien asserts that by failing to provide him with a therapeutic diet, the DOC Defendants have violated both the ADA and the RA.  But as the DOC Defendants correctly note, this claim fails because merely asserting that defendants have violated the ADA or the RA, without alleging any facts demonstrating that the denial was <u>because of</u> his disability, is insufficient to state a claim.  *Brown*, 492 F. App'x at 215.  Nguien also has not alleged that he was excluded from participating in or denied of benefits of any of the prison's services, programs, or activities nor has he alleged that the denial of his requested therapeutic diet was plausibly the result of discrimination or because of his disability.

Moreover, assuming *arguendo* for purpose of this Memorandum Opinion only that Nguien is disabled under the ADA and/or the RA, his allegations that he was unable to procure a proper therapeutic diet, while perhaps raising Eighth Amendment or  negligence concerns, do not constitute an ADA or RA violation as a matter of law.  *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an

ADA violation."); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1001, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for the disability.").  At most, the TAC alleges that the Department of Corrections is liable under the ADA and RA because it has not accommodated Nguien's dietary needs.  Such allegations are insufficient as a matter of law to state a claim under Title II of the ADA or § 504 of the RA.  *See Brown,* 492 Fed. App'x at 215.

For all these reasons, the TAC fails to state a claim under Title II of ADA claim and § 504 of the RA against the Department of Corrections.  As a result, the DOC Defendants' motion will be granted and these claims will be dismissed.

      c. <u>State Law Claims</u>

      i. *Count Six - Intentional Infliction of Emotional Distress*

In Count Six of the TAC, Nguien brings an intentional infliction of emotional distress claim against the DOC Defendants. The DOC Defendants seek to have this claim dismissed based on the doctrine of sovereign immunity.

The Pennsylvania General Assembly, after the judicial abolition of sovereign immunity by the Pennsylvania Supreme Court in *Mayle v. Pa. Dep't of Highways,* 388 A.2d 709 (Pa. 1978), reaffirmed by statute the concept of immunity for the Commonwealth and its employees. The statute reads:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, <u>and its officials and employees acting within the scope of their duties</u>, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions

of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. Cons. Stat. Ann. § 2310 (emphasis added).

According to the clear language of the statute, not only the Commonwealth, but also its employees and officials are entitled to immunity. "In other words, if the Commonwealth is entitled to sovereign immunity . . . , then its officials and employees acting within the scope of their duties are likewise immune." *Moore v. Commonwealth,* 538 A.2d 111, 115 (Pa. Commw. Ct. 1988).

The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody, or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 Pa. Cons. Stat. Ann § 8522.

The proper test to determine whether a Commonwealth employee is protected from liability under 1 Pa. Cons. Stat. Ann. § 2310 and 42 Pa. Cons. Stat. Ann. § 8522 is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity. *See La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. 1992).

Here, the DOC Defendants are current or former employees of the Department of Corrections, a state agency, and, at all relevant times, were acting within the scope of their duties as DOC employees.  Moreover, none of the allegations described in the TAC place the DOC Defendants' actions within any of the nine exceptions to state sovereign immunity.   Thus, Plaintiff's state law claims for intentional infliction of emotional distress against the DOC Defendants are barred by Pennsylvania law and will be dismissed.

ii. *Count Ten - Breach of Contract*

The DOC Defendants argue that the breach of contract claim brought against them in Count Ten of the TAC should be dismissed because "the Board of Claims has exclusive jurisdiction over contract claims against the Commonwealth and its agencies." Br. at 15 (quoting *United Brokers Mortgage Co. v. Fidelity Philadelphia Trust Co*., 363 A.2d 817 (Pa. Commw. Ct. 1976).  The DOC Defendants are correct.  This Court lacks jurisdiction over a breach of contract claim against the DOC.  For that reason, the DOC Defendants' motion to dismiss the claims in Count Ten will be granted.

2.     **Partial Motion to Dismiss filed by the Medical Defendants[7]**

The Medical Defendants seek to dismiss the following: Count 4 (due process claim), Count 5 (failure to train/ supervise claim), Count 6 (intentional infliction of emotional distress claim), Count 7 (*Monell* claim), Counts 8 and 9 (ADA and RA claims), and Count 10 (breach of contract claim).

---

[7]     The Medical Defendants are Correct Care Solutions, LLC ("CCS"), the employer of the medical providers, and the following individual medical providers: Dr. Kansky Delisma, Roxane Playso, Ellis Kaufman and Angela Johnston, CRNP.

a. <u>Section 1983 claims</u>

i.      *Count Four - Due Process Claim*

The explicit source doctrine applies to the due process claims against the Medical Defendants. *See supra*. As a result, the due process claims of Count Four will be dismissed against the Medical Defendants.

ii.      *Count Five – Eighth Amendment - Failure to Train/Supervise*

The same analysis applies to the failure to train/supervise claims against the Medical Defendants as that applied to the failure to train/supervise claims to the DOC Defendants. *See supra.* As a result, Count Five will be dismissed against the Medical Defendants.

*iii. Count Seven – "Monell Claim"*

Paragraphs 189 and 190 of the TAC state:

Defendants PaDoc, and CCS has a policy of delaying if not outright denying Petitioner his disability, and food allergy testing. Due to testing and accommodations are expensive.

As a result of these extreme and outrageous policy, Petitioner suffered injuries and damages as described above, including severe pain and suffering.

TAC, ECF 197.

The Medical Defendants argue that to the extent that Nguien is alleging that an unconstitutional policy or custom attributable to CCS led to a constitutional injury, such a claim fails as the TAC does not sufficiently allege that it had policy or practice deliberately indifferent to Nguien's constitutional rights. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 663 (1978). The Court agrees with this argument.

A private corporation may be held liable for § 1983 constitutional violations if while acting under color of state law, the corporation knew of and acquiesced in the deprivation of a

plaintiff's rights.  *Id*. at  694-95.  To establish liability for a private corporation, the plaintiff must show that the corporation, with "deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989), *cert. denied*, 493 U.S. 1044  (1990).

A fair reading of Nguien's allegations simply does not give rise to an inference that any treatment decision by CCS was based on a cost-saving policy. The "naked assertion that Defendants considered cost in treating [Nguien] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizen receive treatment."  *Winslow v. Prison Health Servs*., 406 F. App'x 671, 674-75 (3d Cir. 2011).  And adopting the reasoning and rationale of Magistrate Judge Keith A. Pesto in a report and recommendation issued in similar circumstances:

> The CCS policy on which plaintiff premises CCS's liability for deliberate indifference is the alleged "unwritten policy" of saving money.  A policy is an official proclamation or edict, so what plaintiff means is a custom, that is, a practice "so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61, (2011).  There are no allegations here that would allow any inference that any treatment decision saved CCS money, or was based on a comparison of its cost with any alternative, much less that there was a persistent and widespread practice of opting for an inferior treatment for plaintiff on the basis of cost.

*Givens v. Naji*, Civ. Act. No. 3:17-cv-222, 2019 WL 4737618 (Sept. 11, 2019), *report and recommendation adopted*, 2019 WL 4736991 (Sept. 27, 2019).

### *iv.*    *Leave to Amend*

As discussed above, although Nguien has amended his complaint multiple times, he remains unable to successfully plead causes of action under 42 U.S.C. § 1983. The Court finds that after three tries it would be inequitable to permit further amendment of the complaint.

b. <u>ADA and RA Claims</u>

In Claims 8 and 9 of the TAC, Nguien alleges that CCS violated the ADA and RA in failing to provide him with a therapeutic diet.  The same analysis applies to the ADA and RA claims against the CCS as that applied to the ADA and RA claims against the Department of Corrections.  *See supra.*  Moreover, the RA applies only to entities that receive federal financial assistance. Because there is nothing in the TAC which suggests that the CCS receives federal financial assistance, it cannot be held liable under the RA.[8] Thus, the ADA and RA claims against CCS will be dismissed.

c. <u>State Law Claims</u>

i. *Count Six – Intentional Infliction of Emotional Distress*

In Count Six, Nguien alleges that the individual Medical Defendants "engaged in extreme and outrageous acts of omission by recklessly delaying if not outright denying Petitioner (sic) food allergy testing, or disability accommodations."  TAC, ¶ 184.  The Medical Defendants argue that the TAC alleges no facts which reveal that these individuals acted with outrageous and extreme conduct towards Nguien.  At this stage of the limitation, the Court finds that the TAC sufficiently pleads enough facts to state a claim for intentional infliction of emotional distress. Accepting the alleged facts to be true and drawing all inferences in Nguien's favor, as the Court must do on a motion to dismiss, the Court finds that Nguien's claim for intentional infliction of emotional distress against these individual Medical Defendants, though extremely tenuous, will be allowed to proceed.

---

[8]  The Medical Defendants have represented to the Court that CCS receives no federal financial assistance.  Br. at 18, n.3 (ECF No. 204).

*ii.   Count Ten – Breach of Contract*

Count Ten of the TAC is entitled "Breach of Contract," yet it also includes language suggesting that Nguien is also seeking to being a negligence claim against the Medical Defendants.  For example, in Paragraph 200, the TAC states, "Department of Corrections and Correct Care Solutions has a contract to provide, care, accommodate, and protect petitioner (sic) while incarcerated."   And then in Paragraph 202, the TAC states that the individual Medical Defendants "owes Petitioner (sic) a duty of reasonable care to protect him from risk of harm to his health and safety."

The Medical Defendants treat these allegations as only a negligence claim.  See Resp. at 19-23.  Nguien does not respond to the Medical Defendants argument.  Rather, he states,

> The DOC, and municipalities had a contract to provide care, and protect Plaintiff during his incarceration. . . . By recklessly disregarding his needs until injuries were sustained.  . . . [T]he DOC Defendants Breach of Contract to provide, care, and protect Plaintiff while incarcerated. The Breach of Contract Claim should proceed.

P's Resp. at 14 (ECF No. 215).

First, if Nguien is seeking to bring a breach of contract claim against the Medical Defendants, the allegations of the TAC do not support such a claim.  In Pennsylvania, third-party beneficiary law is summarized as follows:  a party becomes a third-party beneficiary only where both contracting parties have expressed an intention to benefit the party in the contract itself. *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992) (citing *Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828 (Pa. 1950)).   However, in *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court carved out an exception stating that if the circumstances are so compelling that recognizing the beneficiary's right is appropriate to carry out the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the

19

beneficiary or the circumstances show that the promisee intends to give the beneficiary the benefit of the promised performance. *See also Perlman v. Universal Restoration Sys., Inc.,* No. 09-4215, 2013 WL 5278211, at *8 n.11 (E.D. Pa. Sept. 19, 2013).   The standing requirement "leaves discretion with the trial court to determine if recognition of the third party beneficiary status would be 'appropriate'." *Guy*, 459 A.2d at 751.

That said, other courts in the Third Circuit have found that plaintiffs lack standing to sue for the type of violation Nguien claims; "this is so even if Plaintiff deems or designates himself as a third-party beneficiary of [the] contract." *Parker v. Gateway Nu-Way Found.*, No. 10-2070, 2010 WL 4366144, at *4 (D.N.J. Oct. 26, 2010).   *See also  Zeigler v. Correct Care Sys.*, No. CV 1:16-CV-1895, 2018 WL 1470786, at *4 (M.D. Pa. March 26, 2018); *Robinson v. Corizon Health, Inc.*, No. CV 10-7165, 2016 WL 1274045, at *9 (E.D. Pa. March 30, 2016) (citing cases).   Here, Nguien has not sufficiently alleged that there was an express contractual intent to make him a third-party beneficiary of the relevant contract. Nor do Nguien's allegations support a finding that he has sufficiently alleged compelling circumstances to warrant a finding that he has third-party beneficiary standing.   Ultimately, the allegations of the TAC are not enough to support a breach of contract claim against the Medical Defendants.

Next, the Court turns to the Medical Defendants' arguments that Nguien's medical malpractice claims are subject to dismissal because of his failure to file timely certificates of merit.   Pennsylvania law requires that a certificate of merit accompany a claim for professional liability brought against designated licensed professionals, including health care providers.  *See* Pa R. Civ. P. 1042.3 and 1042.1(b).   The United States Court of Appeals for the Third Circuit has held that Rule 1042.3  is substantive law under the *Erie* doctrine and must be applied as such by federal courts. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011).  This

requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law.  *See Leaphart v. Prison Health Services*, No. 3:10-cv-1019, 2010 WL 5391315 (M.D. Pa. Nov. 22, 2010).

Nguien filed Certificates of Merit and in each stated that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant." (ECF Nos. 91-4, inclusive).   The Medical Defendants argue that Nguien's Certificate of Merits stating that "expert testimony is not required" are improper.

Courts, however, have concluded that a plaintiff's compliance with Rule 1042.3, by "attesting that expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim," is "not fatal at this stage of the proceedings [i.e., a pending motion to dismiss]."  *See Moore  v. Wetzel*, No. 1:18-cv-1523, 2019 WL 1397405, at 13 (M.D.Pa. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 1383631 (M.D.Pa. Mar. 27, 2019).  As the Court of Appeals for the Third Circuit has noted:

> There is no basis in Pennsylvania law that would permit a district court to reject a filing under Rule 1042.3(a)(3) in favor of one filed under Rule 1042.3(a)(1). Pennsylvania law expressly allows a plaintiff to proceed on the basis of a certification that expert testimony will not be required to prove h[is] claim. Of course, the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent "exceptional circumstances." Pa. R. Civ. P. 1042.3(a)(3), Note. A filing under this rule allows the case to proceed to discovery, leaving the consequence of [the plaintiff's] decision to be dealt with at a later stage of the litigation, such as summary judgment or trial.

*Liggon-Redding,* 659 F.3d at 265.  The Court therefore declines to dismiss Nguien's medical malpractice claims against the Medical Defendants at this time.

## C.    CONCLUSION

The motions to dismiss filed by the DOC Defendants and the Medical Defendants will be granted in part and denied in part as follows:

1.      All claims for monetary damages against the DOC Defendants in their official capacities will be dismissed.

2.      Defendants Wetzel, Moore, Schenk, West, Varner, and Joseph will be dismissed with prejudice from this lawsuit for lack of personal involvement.

3.      Both Motions to Dismiss Counts 1, 2, and 3 of the Third Amended Complaint will be denied.

4.      Both Motions to Dismiss Count 4 – due process claims – will be granted and the claims dismissed based on the explicit doctrine rule.

5.      Both Motions to Dismiss Count 5 of the Third Amended Complaint will be granted and the failure to train/supervise claims will be dismissed.

6.      The DOC Defendants' Motion to Dismiss Count 6 – intentional infliction of emotional distress – will be granted based on sovereign immunity grounds.

7.      The Medical Defendants' Motion to Dismiss Count 6 – intentional infliction of emotional distress – will be denied.

8.      Both Motions to Dismiss Count 7 – the Monell claims – will be granted and these claims will be dismissed.

9.      Both Motions to Dismiss Counts 8 and 9 - the ADA and RA claims - will be granted and these claims will be dismissed.

10.      The DOC Defendants' Motion to Dismiss Count 10 – breach of contract - will be granted based on lack of jurisdiction.

11.      The Medical Defendants Motion to Dismiss Count 10 – medical malpractice claim – will be denied.

In sum, as explained in this Memorandum Opinion, this case will proceed <u>ONLY</u> on these claims:

* Counts 1, 2, and 3 against Defendants DOC Defendants James Cosimato, Margaret Gordon, Gumby, Melissa Hainsworth, Hillgross, Brian Hyde, Jane LNU, Justin LNU, Laurel LNU, Pennsylvania Department of Corrections, Gerald Puskar, Joseph Silva, Eric Tice, Tipton, and Whitmore;

* Counts 1, 2, and 3 against all the named Medical Defendants;

* Count 6, intentional infliction of emotional distress, against only the individual Medical Defendants; and

* Count 10 – medical malpractice – against only the Medical Defendants.

      An appropriate Order follows.


August 12, 2021                                          <u>/s Cynthia Reed Eddy</u>
                                              Cynthia Reed Eddy
                                            Chief United States Magistrate Judge



cc:    **ANTHONY NGUIEN**
        NC-2764
        SCI Somerset
        1600 Walters Mill Road
        Somerset, PA 15510
        (via U.S. First Class Mail)

        All Counsel of Record
        (via ECF email notification)