**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**JOHNSTOWN DIVISION**

| | |
|---|---|
| ANTHONY NGUIEN, | ) |
| Plaintiff, | ) Civil Action No. 3: 18-cv-0209 |
| v. | ) United States Magistrate Judge<br>) Cynthia Reed Eddy |
| PENNSYLVANIA DEPARTMENT OF<br>CORRECTIONS, ERIC TICE,<br>Superintendent of SCI Somerset;<br>CORRECT CARE SOLUTIONS,<br>DOCTOR JOSEPH SILVA, Medical<br>Director; DOCTOR DELISMA,<br>ROXANNE PLAYSO, GERALD<br>PUSKAR, ELLIS KAUFFMAN,<br>LAUREN LNU, MARGARET GORDON,<br>PA DOC Clinical Dietitian; WHITMIRE,<br>Dietary supervisor; MR. GUMBY, Dietary<br>Coordinator; JANE LNU; DIETARY<br>SUPERVISOR TIPTON, MELISSA<br>HAINSWORTH, Superintendent SCI<br>Somerset; DIETARY SUPERVISOR<br>HLLGROSS, ANGIE JOHNSON, JAMES<br>COSIMATO; DAVID HYDE,<br>NICKOLAS HYDE, and DUSTIN HYDE,<br>Co-Executors of the Estate of Brian Hyde, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Pending before the Court are the following motions:

(i) The Motion for Summary Judgment by JAMES COSIMATO, MARGARET

GORDON, GUNBY, MELISSA HAINSWORTH, JANE HILLIGOSS, BRIAN HYDE,[2] JANE

---

[1]     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343.  The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of judgment.  *See* ECF Nos. 23, 35, 89, 168, and 185.

LNU, JUSTIN LNU, LAUREL LNU, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, GERALD PUSKAR, JOSEPH SILVA, ERIC TICE, TIPTON, WHITMIRE (collectively referred to as the "DOC DEFENDANTS") (ECF No. 285);[3] and

(ii) The Motion for Summary Judgment filed by CORRECT CARE SOLUTIONS, the state's contractor for prison medical services, and four clinicians employed by Correct Care Solutions – KANSKY DELISMA, M.D.; ANGELA JOHNSTON, CRNP; ELLIS KAUFMAN, P.A., AND ROXANNE PLAYSO, P.A. (collectively referred to as the "Medical Defendants") (ECF No. 289).[4]

Plaintiff filed Omnibus Responses to the motions. The issues are fully briefed and the factual record thoroughly developed. (ECF Nos. 286, 287, 288, 290, 291, 303, 307, 308, and 311). After carefully considering the motions, the material in support and opposition to the motions, the memoranda of the parties, the relevant case law, and the record as a whole, each motion will be granted in part and denied in part. [5]

---

[2]     Following Defendant Hyde's untimely death, his executors were substituted in his stead.

[3]     Discrepancies exist in the spelling of certain DOC Defendants' names. For ease of reference, the Court adopts the spelling provided by the DOC Defendants in their filings which are part of the summary judgment record. Additionally, the Court notes that "Jane LNU" appears to be Jane Hilligoss, as counsel for the DOC Defendants represents that there was no other dietary supervisor with the first name Jane during the relevant time. Therefore "Jane LNU" will be dismissed.

[4]     Discrepancies also exist in the spelling of certain individual Medical Defendants: Roxanne Playso is incorrectly identified as Roxane Plasso; Angela Johnston is incorrectly identified as Angie Johnson; and Ellis Kaufman is incorrectly identified as Ellis Kauffman. The Court adopts the spelling provided by the Medical Defendants in their filings which are part of the summary judgment record.

[5]     Because the underlying facts of Plaintiff's claims often apply to both the DOC Defendants and the Medical Defendants, the pending motions for summary judgment can be most effectively and efficiently addressed together.

## I.   PROCEDURAL HISTORY

Plaintiff, Anthony Nguien ("Nguien"), is a convicted Pennsylvania state prisoner who, at all times relevant, was housed at SCI-Somerset.[6]   In general terms, Nguien claims that he has been diagnosed with several food allergies for which he is prescribed a special non-standard Therapeutic Diet.[7]   Nguien alleges that during his time at SCI-Somerset, Defendants failed to treat him by (i) delaying ordering tests to confirm he had food allergies, (ii) not eliminating all known food allergies on his therapeutic diets; and (iii) being provided with food trays that contained foods that were not in compliance with his approved therapeutic diets.   He alleges that as a result, he repeatedly was faced with the prospect of either going hungry with stomach pain or eating food that would make him very ill.   Specifically, when he eats (or is around) foods that he is allergic to, he experiences "severe allergic reactions," such as breaking out in hives, feeling dizzy, being itchy all over, shortness of breath, asthma attacks, and bowel problems.   He also claims to have suffered mental and emotional distress from fear of having an allergic reaction every time he ate. Nguien seeks declaratory judgment, compensatory and punitive damages, and injunctive relief.

Following the Court's rulings on Defendants' motions to dismiss the Third Amended Complaint, which remains Nguien's operative pleading, the following five claims remain:  (i) an Eighth Amendment – condition of confinement claim against all Defendants (Count 1), (ii) an

---

[6]      In April 2022, Plaintiff filed a Change of Address form indicating he had been transferred to SCI-Coal Township.  (ECF Nos. 272, 281).

[7]      A clinical report dated 4/23/2020 states that Nguien is allergic to beans (moderate), Lactose intolerance (moderate), potatoes (moderate), red sauce (severe), soy balance (severity unknown), soy products (severe), tomato (moderate), and Tylenol (severity unknown).  ECF No. 291-1 at p. 1.

Eighth Amendment – failure to intervene  claim against all Defendants (Count 2); (iii) an Eighth Amendment – deliberate indifference to serious medical needs claim against all Defendants; (iv) a state law intentional infliction of emotional distress claim against only the individual Medical Defendants (Count 6); and (v) a state law negligence/ medical malpractice against the Medical Defendants. (Count 10).

Following the close of discovery, the DOC Defendants and the Medical Defendants filed separate motions for summary judgment.  Nguien responded in opposition. The issues have been fully briefed and the factual record developed. The motions for summary judgment are ripe for disposition.

## II.     EVIDENCE CONSIDERED ON SUMMARY JUDGMENT

In support of their motions, the DOC Defendants submitted declarations from Warren Whitmyre, Anne Brown, James Cosimato, as well as portions of Nguien's medical records, documents relating to Grievance No. 860785, and documents previously filed in this case, including the Declaration of Brian Hyde.

The Medical Defendants submitted significant portions of Nguien's medical records.[8]

Plaintiff filed his own exhibits as evidence in opposition to the summary judgment motions, including his own Declaration (ECF Nos. 307, 308-1, and 311-1), and various DOC documents, including multiple Requests to Staff Member Forms and documents relating to Grievance No. 722378 filed on 02/21/2018. (ECF No. 308). Nguien's Third Amended Complaint is a verified complaint, so the factual allegations in it, to the extent they are based on personal knowledge, will also be considered as evidence in opposition to the summary judgment motions.

---

[8]     The summary judgment medical record in this case is extensive, comprised of over 500 pages.  *See* ECF Nos. 287-5, 287-6, 287-7, 287-291-1, 308, and 311.

*Jackson v. Armel*, 2020 WL 2104748, at *5 (W.D.Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion).  *See also Brooks v. Kyler,* 204 F. 3d 102, 108 n. 7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from a [pro se prisoner] at the summary judgment phase of the proceedings"); *Boomer v. Lewis*, 2009 WL 2900778, at *2 n.4 (M.D.Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").  Nguien's responses in opposition to the summary judgment motions are also signed and sworn to under penalty of perjury. (ECF Nos. 303, 307).  Thus, to the extent that those documents set forth facts within his personal knowledge, the Court also treats those facts as Nguien's summary judgment evidence.

Detailed facts relevant to the specific claims against specific defendants are addressed in the context of addressing each claim.

## III.    STANDARD OF REVIEW

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled.  A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48.  An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue.  See id.  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita,* 475 U.S. at 587; *Huston*, 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants.  Where a party is representing himself pro se, the complaint is to be construed liberally.  A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").  Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation*, 912 F.22d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

With these standards in mind, the Court now turns to the motions for summary judgment.

## IV.   RELEVANT UNDISPUTED FACTS

The relevant undisputed facts in this case are as follows.[9]

### Therapeutic Diet Orders

The DOC provides appropriate diets for prisoners who require diet modification for medical need or for sincerely held religious beliefs.   Therapeutic diets are for documented medical needs and are prescribed by a physician, psychiatrist, dentist, physician assistant, or nurse practitioner.   The diets are modified at the discretion of the medical department.   *See* Declaration of Anne Brown, at ¶ 3. (ECF No. 287-3). The medical department sends the request for a diet modification to the dietician in DOC's Central Office via either Standard Therapeutic Diet Order Form – DC 465A or Non-Standard Therapeutic Diet Order Form – 465B.

The dietician reviews and either accepts or rejects the medical department's request for the prisoner's therapeutic diet.   If approved, the authorized menu is then sent to the Corrections Food Service Manager at the facility in which the prisoner is housed, who in turn provides the menu to the staff so that food with the appropriate ingredients and preparation can be made and provided to the prisoners.   Declaration of Warren Whitmyre. (ECF No. 287-1).   Any time a new Therapeutic Diet Order Form is created, the diet in that form supersedes other diets that were in effect.   A therapeutic diet may be ordered for a period not to exceed 210 days.   *Id.*

### Anthony Nguien and His Dietary Restrictions

Nguien contends that when he is exposed to foods to which he is allergic, he has severe reactions, including breaking out in hives, feeling dizzy, being itchy all over, shortness of breath, asthma attacks, and bowel problems.

---

[9]      The relevant factual background is taken from the summary judgment record and is viewed in the light most favorable to Nguien, as he is the non-movant.

In September 2017, while Nguien was housed at SCI-Graterford, Dr. L. Hanushak submitted a non-standard therapeutic diet order form to Defendant Margaret Gordon, the DOC Dietary Services Management Specialist/Dietician,[10] recommending that Nguien's diet contain "no soy, no red sauce."[11]   The diet was to be in effect from 9/21/2017 – 3/21/2018.   Defendant Gordon reviewed the request and issued a directive that "no tomato, no onion, etc. no soy for 30 days.  Allergy to soy and tomato needs to be verified through testing per policy."  (ECF No. 291-1 at pp. 299-300, 372-73).

Two months later, in November 2017, while Nguien was housed at SCI-Camp Hill, Amy Flatt Manning, PA, submitted a new therapeutic diet order form requesting that Nguien's diet be "lactose free diet, no soy."  Defendant Gordon reviewed the request and issued a directive "lactose restricted and no soy."[12] (ECF No. 287-2, at p. 1,2; 291-1 at p. 297-98). This diet was to be in effect from 11/16/2017 to 5/16/2018.  Notably, this diet did not eliminate tomatoes or onions from Nguien's diet.  (ECF No. 287-2 at p. 1, 2; 291-1 at pp. 297-98).

Nguien was transferred to SCI-Somerset on December 26, 2017.   His Intrasystem Transfer Screening report noted the following:

Current Acute Conditions/Problems: cold/cough, medicated shampoo/lotion

---

[10]   Anne Brown assumed the role of Dietary Services Management Specialist/Dietician in January 2020, soon after the retirement of Defendant Gordon.

[11]   The undisputed summary judgment record evidence reflects that Nguien's diets have all been non-standard therapeutic diets.

[12]   A lactose restricted diet is used for the management of lactose intolerance and is designed to limit lactose, the primary sugar found in many dairy products.  Intolerance is usually self-reported and is honored without the requirement of clinical verification."  Declaration of Anne Brown, at ¶ 14. (ECF No. 287-3).  "Nguien was tested for a cow's milk allergy and his testing was non-responsive, indicating that a dairy protein allergy is unlikely."  *Id*. at ¶ 13; Laboratory Report, 3/18/2018 (ECF No. 287-6 at p. 3).

Medical Complaints:  pain in left ankle & chronic back pain, cervical pain

Significant Medical History:  history of back pain

Allergies:  Tylenol, Aspirin, food allergies

Food Allergies:  soybean, tomato, beans  - styrofoam only – tray to cell

Physician Disabilities / Limitations:  walk with cane

(ECF No. 291-1 at p. 444).   Approximately two weeks after his arrival at SCI-Somerset, Dr. Giron submitted a new therapeutic diet order request recommending "gluten free diet and lectin avoidance." (ECF No. 291-1 at pp. 254-65; 321-22).  Dr. Giron's notes indicate that Nguien has irritable bowel syndrome with profound intolerance to wheat, soy, and other high lectin foods. *Id.*  Defendant Gordan approved the diet on 1/17/2018 noting "gluten free diet to be discontinued if [Nguien] is non-compliant; review of commissary indicates [Nguien] purchases significant amounts of food containing gluten, i.e., ramen noodles, cookies, etc."  *Id.*

During the relevant time period, Nguien repeatedly mentioned to his medical providers that he had food allergies and complained that he was being provided food trays inconsistent with his dietary needs.   He underwent several RAST tests which revealed he had a protein allergy to tomatoes and acetaminophen (02/18/2018), soy and potatoes (02/23/2018), and beans/legumes (04/3/2018).[13]  Nguien's diet was adjusted to reflect the results from each of the RAST tests.  The summary judgment record evidence reflects that Nguien's diet was adjusted thirteen times between September 2017 and September 20, 2020.  However, as reflected in the

---

[13]     The summary judgment record does not indicate whether a RAST test confirmed Nguien was allergic to onions, but the summary judgment record reflects that "onions, etc." were directed to be eliminated from his diet beginning on 2/09/2018. (ECF No. 291-1 at p. 323).

below chart, the requested diet and the approved diet often did not eliminate all of Nguien's

known and confirmed food allergies:

| Date of Request for Diet Change; Modification Request | Approved Diet |
|---|---|
| 09/21/2017  - requested by L. Hanushak, MD - No soy, no red sauce | No tomato, no onion, etc.,[14] no soy diet for 30 days.  Allergy to soy and tomato needs to be verified through testing policy<br>Approved:  M. Gordon<br>(ECF No. 291-1 at pp. 299-300; 372-373) |
| 11/16/2017 – requested by Amy Flatt Manning, PA - No soy, lactose free | Lactose restricted; no soy<br>Approved by M. Gordon and<br>Julian Guitierrez-Molimna<br>(ECF Nos. 287-2 at p. 1,2; ECF No. 291-1 at pp. 297-98) |
| 01/17/2018 – requested by J. Girone, MD – gluten free diet and lectin avoidance | Gluten Free Diet – to be discontinued if inmate is non-compliant<br>Approved by M. Gordon<br>(ECF No. No. 291-1 at pp. 264-65; 321-22) |
| 02/08/2018 – requested by Angela Johnston, CRNP – no tomato diet.  RAST testing confirmed allergy to tomato | No tomato, no onion, etc.[15]<br>Approved M. Gordon<br>(ECF No. No. 291-1 at p. 323) |
| 02/23/2018 – requested by L. Hanuschak, MD – no tomato, no soy. RAST testing confirmed allergy to soy | No tomato, no onion, etc., no soy[16]<br>Approved M. Gordon<br>(ECF No. 291-1 at pp. 301-04) |
| 03/23/2018 – requested by D. Albright, CRNP – no potato, no tomatoes, milk intolerant | No tomato, no onion, etc., no potato, lactose restricted diet[17]<br>Approved M. Gordon<br>(ECF No. 291-1- pp. 305-06) |

[14]    The parties do not explain what additional foods are excluded with the notation "no onion, etc."

[15]    Neither the requested diet nor the approved diet eliminated soy. Defendant Gordan  added the elimination of "onion, etc." on the approved diet.

[16]    Defendant Gordan  added the elimination of "onion, etc." on the approved diet.

[17]    Neither the requested diet nor the approved diet eliminated soy. Defendant Gordan added the elimination of "onion, etc." to the approved diet.

| | |
|---|---|
| RAST testing confirmed allergy to potato | |
| 03/30/2018 – requested by S. Kamisky – no soy, potato, tomato, and lactose intolerant | No tomato, no onion, etc., no potatoes, no soy, lactose restricted diet[18]<br>Approved M. Gordon<br>(ECF No. 291-1- pp. 290-91) |
| 07/05/2018 – requested by Patricia Miller, LPN – no bean, no soy, no legume RAST testing on 4/30/2018 confirmed high results in allergies to beans (soybean, black beans, white beans, red kidney beans, green string beans, lima beans, and pinto beans) (ECF Nos. 91-1 at p. 308; 291-1 at pp. 307-08) | No soy, no legume[19]<br>Approved M. Gordon and K. Delisma, MD |
| 08/08/2018 – requested by R. Playso, PA – no beans, legumes, soy, dairy/lactose, potatoes, tomatoes | No tomato, soy, legumes, potato, lactose restricted[20]<br>Approved M. Gordon<br>(ECF No. 291-1 at pp. 309-310) |
| 01/25/2019 – requested by James Cosimato, LPN – no soy, legumes, beans, tomatoes, potatoes, dairy, lactose – renewal/continuation of diet | No tomato, no onion, etc., no soy, no legumes, lactose diet[21]<br>Approved:  M. Gordon and K. Delisma, MD<br>(ECF No. 291-1 at pp. 311-12) |
| 03/03/2019 – K Delisma, MD | Inmate seen complaining of acute onset of rash after touching a small amount of peanut butter, soy product.   Assessment: |

---

[18]     The requested diet did not eliminate "onion, etc.," although Defendant Gordan added the elimination of "onion, etc." to the approved diet.

[19]     Neither the requested diet nor the approved diet eliminated tomato, potato, or onion.

[20]     Neither the requested diet nor the approved diet eliminated onions. Defendant Gordon noted in her approval that "inmate purchases products from commissary that contain soy."

[21]     Requested diet does not eliminate onions.  Approved diet eliminates onions, but does not eliminate potatoes.

| | possible allergic dermatitis secondary to his food allergy |
|---|---|
| 07/21/2019 – requested by James Cosimato, LPN  - no soy, legumes, beans, tomatoes, potatoes, dairy, lactose – renewal/continuation of diet | No tomato, no onion, etc., no soy, legume, potatoes, dairy diet Approved M. Gordon and K. Delisma, MD (ECF No. 291-1 at pp. 314-15) |
| 02/08/2020 –assessment requested by K. Delisma, MD – patient has history of food allergies including beans, potatoes, soy balance, tomato, red sauce, soy products | Diet approved is no tomato (no tomato, no onion, etc.), no soy, no legume, no potato, lactose restricted. (ECF No. 291-1 at p. 76-77) |
| 02/10/2020 – Anne Brown conducts nutritional assessment[22] | Diet Order:  no soy, no legume, no potato, no tomato (no tomato, onion, etc), no dairy diet.  - Anne Brown (ECF No. 291-1 at p. 67) |
| 03/12/2020 – requested by Ellis Kaufman, PA – no tomato, onion, soy, legume, potato, or dairy diet.  Diet continuation order. | No tomato (no tomato, onion, etc.), no soy, no legumes, no potato, lactose restricted diet approved Approved Anne Brown and K. Delisma, MD ((ECF No. 291-1 at p. 51) |
| 09/01/2020 | No tomato, onion, celery, green pepper or spice diet, no soy, no legume, no potato, no peanut, lactose restricted[23] Declaration of Warren Whitmyre, ECF 287-1, ¶13(m) |

The summary judgment medical evidence also reflects that on April 16, 2018, the medical department requested a diet modification to include string beans and beans (legumes). Defendant Gordan declined the request stating that allergy to legumes needed to be verified through testing and that the requested diet did not address other known allergies and/or lactose

---

[22]    On February 10, 2020, Dietician Brown completed a nutritional assessment and noted that "inmate consuming foods from commissary – pretzels, BBQ corn chips, mackerel in brine, summer sausages, non-dairy creamers, etc.  Some items likely contain incidental soy as ingredients, but overall, appears that he is tolerating diet well despite subjective report of not being able to tolerate the food." (ECF No. 291-1 at p. 67).

[23]    "Per DOC policy, testing to eliminate peanuts from an inmate's diet is not required; as such, peanuts were removed from Mr. Nguien's diet without testing."   Declaration of Anne Brown, at ¶ 15. (ECF No. 287-3).

intolerance.  (ECF Nos. 291-1 at pp. 292-93; 360-61).  It appears that a RAST test for bean allergy was ordered on 4/20/2018 and the results of that test came back with high results in allergies to beans.  Notably, however, beans were not eliminated from Nguien's diet until 07/05/2018, over two months after the RAST results confirmed the bean allergy. (ECF No. 91-1 at p. 308; 291-1 at pp. 307-08).  Additionally, peanuts were not eliminated from Nguien's diet until 09/01/2020, approximately eighteen months after the record reflects that he was seen for a rash after reportedly touching a small amount of peanut butter.

### Anthony Nguien and His Medical Treatment at SCI-Somerset

Nguien was transferred to SCI-Somerset on December 26, 2017, and with the exception of a short period of time while he was transferred to SCI-Graterford, he remained at SCI-Somerset until he was transferred to SCI-Coal Township in April 2022.[24]  The undisputed medical record reflects that while at SCI-Somerset, Nguien received frequent medical treatment for various conditions, including chronic pain in his foot and leg, plantar fasciitis, persistent cough, wheezing, shortness of breath, asthmatic bronchitis, eczema, atopic dermatitis, lightheadedness, mobility impairment, reported multiple falls secondary to lower extremity weakness, and recurring bowel problems, including fecal incontinence and a history of blood in his stools.

Additionally, the medical records and the parties' Concise Statements of Material Facts contain significant detail about Nguien's repeated complaints of various symptoms that he attributed to his allergies.  These included "severe allergic reactions," such as breaking out in hives, feeling dizzy, being itchy all over, shortness of breath, and asthma attacks.

---

[24]    According to the Third Amended Complaint, Nguien was transferred to SCI-Graterford from mid-March 2018 until April 17, 2018 on an authorized temporary absence ("ATA"). During this ATA, he had two food allergy attacks.  *See* Third Amended Complaint, ¶ 58.

There is no doubt that Nguien was frequently seen by medical personnel during the relevant time period.  Repeatedly, his vital statistics were normal, he generally appeared well, and his weight was not varying greatly.  He was regularly examined by the medical department for his complaints of rash/skin irritation and food allergies.  When he complained that his rash/skin irritation was worse after he received his clothes back from laundry, a trial was ordered on the clothes on the AA block.  He was prescribed various cremes and lotions and received injections of Kenalog. He also was referred to an outside dermatologist, Dr. Debra Conn with Dermatology Telemedicine, who diagnosed Nguien as having eczematoid dermatitis.

As for possible food allergies, RAST allergy tests were ordered by the medical department.  His therapeutic diet was changed to comport with the allergy test results. However, the record reflects that his subsequent diet orders often did not eliminate all his known food allergies. Defendants argue that records of Nguien's commissary purchases indicate he was purchasing foods that contained gluten and soy. The summary judgment record is unclear, however, if Nguien's commissary food purchases were actually for him. For instance, A Request to Staff Member (Commissary) written by Nguien on 12/31/2018, inquires:  "I would like to know if I would get in trouble if I order food that I am allergic to so I can pay or give back people I owe since I been borrowing food from others."  (ECF No. 308-1 at p. 60). The response informed Nguien, "You can order whatever you are allowed to order. We do not keep track of this sort of thing." (*Id*.). *See also* Third Amended Complaint, at ¶ 150.  The medical staff repeatedly counseled Nguien to avoid purchasing and consuming foods that contained allergens.

On February 21, 2018, approximately two months after arriving at SCI-Somerset, Nguien filed Grievance No. 722378 stating he had a severe allergy to tomatoes, beans, soy, potatoes, and dairy.  (ECF No. 308-1 at p. 14).  He reported that since arriving at SCI-Somerset he had

contacted numerous DOC personnel, including Defendants Hyde, Playso, Gordon, Gunby, and Whitmyre, about his severe food allergies, and yet was continuing to be given food to which he was allergic.  He also stated that he had a severe food reaction on 02/13/2018, "broke out in hives, my throat became swollen, and I couldn't breathe."  He reported that on 2/16/2018 – 02/20/2018, "there was dairy with my food tray and on 2-20-2018 there was potato and chocolate pudding with dairy on my tray."  *Id.*

The grievance was denied upon initial review (ECF No. 308-1 at p. 15) and by the Superintendent, Melissa Hainsworth (*Id*. at p. 18).  However, the grievance was upheld in part on final review by the Secretary's Office of Inmate Grievances & Appeals (SOIGA):

> Your dietary concerns were reviewed by the staff of the Bureau of Health Care Services, Food Services Division.
>
> The review determined that there have been eight different diet orders written for you since September 2017 – 9/21/17; no soy, red sauce; 11/26/17 – no soy, lactose restricted; 1/17/18 – gluten free (commissary not consistent with order); 2/9/18 – no tomato; 2/23/14: no tomato, soy; 3/24/18 – no tomato, potato, lactose restricted; 3/30/18:  no tomato, soy, potato, lactose restricted; 4/16/18: no soy, legumes.  Each diet order supersedes the previous one.
>
> The order written for 4/16/18 for no legumes, no soy was not approved as it did not address previously verified food allergies.  Food services has been provided with a diet menu for a no tomato, soy, potato, lactose restricted diet to follow in preparing meal trays for you.  A comprehensive diet order to eliminate all known food allergies as well as lactose intolerance needs to be written before the diet can be provided.
>
> Based on the aforementioned information, your appeal to this office is upheld in part/denied in part.  **Upheld in part in that prior diet orders didn't entirely address your needs** and denied in part in that no deliberate indifference was found.  Your requested monetary relief is also denied.

(*Id*. at p. 23) (emphasis added).  Yet, despite SOIGA noting in June of 2018 that Nguien's prior diet orders did not entirely address his needs, the record reflects that the problem with his diet and food trays continued. Nguien repeatedly complained of the issue, submitting Requests of

Staff ("ROS") to members in the Dietary and Medical Departments.    In response to Nguien's

letter of December 19, 2019 regarding his diet, Craig M. Cooper, Chief, Food Services Division,

wrote,

> Your diet is currently an issue under litigation.  You are advised that questions
> and concerns regarding your diet should be communicated through legal counsel.
>
> Any further correspondence received from you regarding this matter may be filed
> without a response.

(*Id*. at p. 308).[25]

Often, during his sick call visits, he would inform the medical providers that his trays

contained foods to which he was allergic. *See* ECF No. 303 and supporting documentation at

ECF No. 308; medical records at ECF No. 291.  In response his medical providers often told him

to contact Diet / Food Services.  He would then submit Request of Staff Forms to Diet / Food

Services.  When he would submit a ROS to Dietary, he was often told to contact Medical

Department.  And when he would submit a ROS to Food Services, he was often told it was

following the diet according to the directives given by the Dietician.

## V.    MERITS ANALYSIS

Before addressing the merits of the parties' arguments, the Court notes that Nguien has

requested that "**Medical Director Joseph Silva and RN Lauren LNU**" be dismissed.  *See*

Omnibus Response at ¶ 17. (ECF 303 at p. 3). Nguien's request will be granted without objection

and Defendants Silva and Lauren LNU will be dismissed from this lawsuit.

---

[25]    Defendants Tice, Hyde, Whitmyre, and Gunby were among the recipients copied on the
letter.  It is not real clear what the directive to "communicate[] through legal counsel" meant –
since Nguien has always appeared pro se, it may be that Nguien was being directed to convey all
questions and concerns about his diet via this lawsuit which was filed on September 17, 2018.

A.      **Section 1983 Claims Against the DOC Defendants[26] and the Medical Defendants**

Section 1983 of the Civil Rights Act provides:

Every person who, under the color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  Thus, to state a claim for relief under Section 1983, a plaintiff must demonstrate that (1) the alleged misconduct was committed by a person acting under color of state law; and (2) that such conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

1.      **State Action**

The parties do not dispute that all of the defendants were acting under the color of state law at all relevant times.

2.      **The Eighth Amendment**

Nguien claims that the Defendants violated his rights under the Eighth Amendment to the U.S. Constitution.  The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend. VIII.  In the most general sense, a prison official violates the Eighth Amendment when two elements are established: (1) the inmate alleges an objectively serious deprivation by a prison

---

[26]     The remaining DOC Defendants are James Cosimato, Margaret Gordon, Gunby, Melissa Hainsworth, Jane Hilligoss, Brian Hyde, Justin LNU, Pennsylvania Department of Corrections, Gerald Puskar, Eric Tice, Tipton, and Whitmire. These defendants will be divided into five sub-groups:  (i) the Department of Corrections; (ii) SCI-Somerset Administrators (Hainsworth and Tice); (iii) Non-Medical Prison Official (Brian Hyde),  (iv) DOC Dietary Personnel (Gordon, Whitmyre, Tipton, Hilligross, and Gunby) and (v) DOC Medical Providers (Cosimato, Justin LNU, and Puskar).

official of food, clothing, shelter, medical care, or safety; and (2) the prison official acted with a sufficiently culpable state of mind to deprive the inmate of his right to food, clothing, shelter, medical care, or safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Gamble v. Estelle*, 429 U.S. 97 (1976). The deliberate indifference standard under the Eighth Amendment requires the prisons to show (1) a serious medical need and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *see also Natale* v. *Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

The Court of Appeals for the Third Circuit has defined a serious medical need as (1) "'one that has been diagnosed by a physician as requiring treatment[;]' " (2) " 'one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention[;]' " or (3) one "where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' or 'a life-long handicap or permanent loss[.]' " *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). To state a claim challenging conditions of confinement, an inmate must allege facts that would, if proven establish that the deprivations of his right was objectively serious and the prison official had sufficiently culpable state of mind – that is, that the official acted with deliberate indifference. *Beers-Capital v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 834)).

Whether the harm is objectively serious is measured by society's view of the risk to the prisoner's health and safety, that is, "whether 'it violates contemporary standards of decency to expose anyone unwillingly to such a risk'." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). Only conditions that deprive the prisoner of one of life's necessities, such as food, water, clothing, shelter, and

medical care are unconstitutional.  *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).  Unless the condition is objectively serious, there is no constitutional violation.

Defendants' focus on the second prong of the *Estelle* inquiry – whether prison officials acted with deliberate indifference to his serious medical needs. The Court will assume, for purposes of deciding the summary judgment motions only, that Nguien's dietary needs were serious and will focus only on the deliberate indifference prong.

The second element of the *Estelle* test requires a prisoner to show that prison officials acted with deliberate indifference to the prisoner's serious medical needs.  *Natale*, 318 F.3d at 582. In order to find that state officials acted with deliberate indifference, a plaintiff must prove that the official knew of and disregarded an excessive risk to inmate health or safety. *Id*. (citing *Farmer,* 511 U.S. at 837). "'Deliberate indifference' is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm." *Andrews v. Camden Cnty*., 95 F.Supp.2d 217, 228 (D.N.J. 2000) (citing *Farmer*, 511 U.S. at 837–38). Thus, "in order to survive a summary judgment motion, in which the movant argues that there is an absence of evidence to support [the plaintiff's] case, the plaintiff must point to some evidence beyond [his] raw claim that [defendant] was deliberately indifferent." *Singletary v. Pa. Dep't of Corr*., 266 F.3d 186, 192 n. 2 (3d Cir. 2001) (citing *Celotex*, 477 U.S. at 325). In other words, the plaintiff must come forward with "some evidence 'that [defendant] knew or was aware of [the] risk [to plaintiff].'" *Id*.

The DOC Defendants argue that "to the extent errors are made, they are unintentional and do not pose a serious threat to Nguien's life." Both the DOC Defendants and the Medical Defendants contend they are entitled to summary judgment on a number of grounds.  Nguien

obviously argues otherwise stating there are genuine issues of material fact which prevent granting summary judgment.

### a. The Department of Corrections

The DOC argues that it is entitled to summary judgment because it is not a person as contemplated by 42 U.S.C. § 1983. Nguien does not disagree, but states that he "has brought forth his suit against the defendants within their personal and individual capacities." ECF No. 307 at p. 8.

The DOC is a named defendant in the Third Amended Complaint. Paragraph 5 of the Third Amended Complaint states:

> Defendant Pennsylvania Department of Corrections (PaDOC) a corporation, at all relevant times is a political subdivision of Pennsylvania, and is totally responsible for hiring, retention, entrustment and adequate training, testing, and supervision of all employees at [SCI-Somerset]. Is being sued in their official capacities for Breach of Contract, and Deliberate Indifference.

Third Amended Complaint, at ¶ 5 (ECF No. 197).

Therefore, to the extent that Nguien has brought any claims against the institutional defendant, the Eleventh Amendment proscribes actions in the federal courts against, *inter alia*, states and their agencies. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania*); Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977) (state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. "Because the Commonwealth of Pennsylvania's

Department of Corrections is a part of the executive department of the Commonwealth, see Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pennsylvania, Dept. of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).   Moreover, as a state agency, Defendant DOC is not a "person" against whom a civil rights action may be brought under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Accordingly, summary judgment will be granted in favor of **Defendant DOC**.

The Third Amended Complaint also states that defendants are named in their individual and official capacities.   As for any claims brought against the DOC Defendants in their <u>official</u> capacities, this issue previously was addressed by the Court in its Memorandum Opinion of August 21, 2021. (ECF No.  222).   It is well settled that suits for damages by individuals against, *inter alia*, state officers acting in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. at 165-67 (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment).

### b. SCI-Somerset Superintendents (Hainsworth and Tice)

Defendants Tice and Hainsworth seek summary judgment based on their lack of personal involvement in conduct amounting to a constitutional violation. In response, Nguien states that Defendants Hainsworth and Tice had direct knowledge of continuing problems with his therapeutic diet orders and failed to do anything.

The United States Court of Appeals for the Third Circuit has explained that there are two theories of supervisory liability in a § 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of and

acquiesced in their subordinates' violations. *Santiago v. Warmister Twp.*, 629 F.3d 121, 128-29 n.4 (3d Cir. 2010). It is well established that a supervisor is not automatically liable for the actions of subordinates.   Additionally, non-medical personnel are entitled to rely upon the medical decisions made by professionals. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

Defendants contend that the only allegations against Defendants Hainsworth and Tice pertain to these individuals' participation in the grievance process itself. Nguien contends that he repeatedly informed Defendants Hainsworth and Tice that he was continuing to be served a diet not in compliance with his dietary restrictions and, despite these notifications, these defendants ignored his requests for assistance.

Specifically, as to **Defendant Superintendent Hainsworth**, Nguien points to the Facility Manager's denial of Grievance No. 722378.  *See* Third Amended Complaint, at ¶ 71; and ECF No. 308 at ¶ 39 and No. 308-1 at p. 18). Involvement in the grievance process, however, does not necessarily establish the actual knowledge necessary for personal involvement for a § 1983 claim.

As to **Defendant Superintendent Tice**, Nguien contends that on August 31, 2018, while he was in "the main line," he informed Defendant Tice of his problems with his therapeutic diet trays and asked if could assist. (Third Amended Complaint, at ¶ 86; ECF No. 308 at ¶ 97). Defendant Tice replied that Nguien should write to him in a Request of Staff ("ROS").  Nguien then submitted at least two ROSs addressed to Defendant Tice.  In response, Defendant Tice

replied that he would forward Nguien's concerns to CHCA Hyde to review and respond.  (ECF No. 308 at ¶¶ 97, 100).

The Court agrees with that the DOC Defendants that given the limited involvement in Nguien's care and the well-established law that ruling against a prisoner on his grievance does not make a prison official liable for an underlying constitutional violation, summary judgment in favor of **Defendants Hainsworth and Tice** is appropriate.

### c.  DOC Non-Medical Prison Official – Brian Hyde

However, this is not the case with **Defendant Hyde.**  Courts in the Third Circuit have recognized that CHCAs are "undisputably administrators, not doctors," and, therefore, under S*pruill* "will generally be justified in believing that the prisoner is in capable hands" if the "prisoner is under the care of medical experts." *Thomas v. Dragovich*,  142 F. App'x 33, 39 (3d Cir. 2005); *Pearson v. Prison Health Serv*., 850 F.3d 526, 543 (3d Cir. 2017).

Defendant Hyde's duties as the Corrections Health Care Administrator were administrative and he did not provide or direct medical care to inmates.  *See* Declaration of Brian Hyde (ECF No. 287-7 at ¶ 3).  However, he did on occasion review Sick Call Slips, some of which were from Nguien.  *Id*.

Additionally, Defendant Hyde often reviewed Nguien's ROSs. In response to Nguien's requests, Defendant Hyde offered various responses, such as "this will be addressed in the grievance," (ECF No. 303, at ¶ 33); or "all diets are dietary, write to them." (*id*. at  ¶ 36).  The Court finds that there is evidence from which a reasonable jury could find that Defendant Hyde had reason to believe that prison doctors or their assistants or the dietary department were not providing Nguien with correct therapeutic diets. As such, a reasonable factfinder could find that

Defendant Hyde's actions constitute deliberate indifference. For this reason, the motion for summary judgment filed on behalf of **Defendant Hyde** will be denied.

### d. The DOC Clinical Dietician, the DOC Dietary Personnel, the DOC Medical Providers, and the Individual Medical Defendants

There is no dispute that all allergies must be confirmed through a RAST blood test before a therapeutic diet can be approved.  Nguien had such a confirmation for tomatoes since February 8, 2018; for soy and potatoes since February 23, 2018, and for beans / legumes since April 30, 2018.[27]   Yet, despite these confirmed results, the requests for diet modification and the approved diets often did not entirely eliminate all his known food allergies.

Genuine issues of material fact exist which preclude summary judgment.  It is not clear from the record why diet modifications requested by medical providers, **DOC Defendant Cosimato** and **Medical Defendants Playso and Johnston**, did not include all foods which Nguien had confirmed allergies.   Similarly, on several occasions diets approved by DOC **Defendant Gordon and/or Medical Defendant Delisma** did not include all foods to which Nguien had confirmed allergies.  And although **DOC Defendant Justin LNU** appears to have only seen Nguien once on his return back from ATA on April 17, 2018, Defendant Justin issued a new diet pass <u>only</u> for no soy, no legumes.  (Third Amended Complaint, at ¶ 64).  It is not clear why the diet pass issued on April 17, 2018, did <u>not</u> include tomatoes, potatoes, onion, etc. and lactose restricted, all of which were on the approved therapeutic diet issued on 3/30/2018 (which the record reflects was to end on 3/30/2019). (ECF No. 291-1 at pp. 290-91).

---

[27]     Although the positive results from the RAST test for beans/legumes came back on April 30, 2018, Nguien's diet was not modified to eliminate beans until July 5, 2018.

Prisoners have a right to a nutritionally adequate diet. *Farmer*, 511 U.S. at 832; *see also Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008) ("Prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment.") (citing *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) ("This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.")); *Jackson v. Gordon*, 145 F. App'x 774, 776 (3d Cir. 2005) (3d Cir. 2005) (inmate stated a claim under the Eighth Amendment when he alleged the prison officials knew that he was severely lactose intolerant and allergic to eggs but denied him a therapeutic diet). As both the DOC Defendants and the Medical Defendants correctly point out, Nguien's weight remained stable through the relevant time period. Weight loss, however, is not the only way for Nguien to show that his diet was inadequate. Regardless of his appearance, Nguien repeatedly complained of significant pain and other symptoms. An Eighth Amendment claim based on a lack of adequate nutrition can be stated by allegations that the prisoner "lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet." *Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (quoting *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999**)).** Nguien repeatedly complained he was being served food trays inconsistent with his dietary needs and as a result he was suffering significant symptoms. Further, the record reflects at least one instance of a 20-pound weight loss after it appears soy may have been reintroduced into his diet. After the diet was modified, and soy was again eliminated, it appears Nguien's weight bounced back to 175 pounds. [28]

---

[28]     The medical records show Nguien's weight on 09/21/2017 as 155 lbs; on 11/16/2017 as 166 lbs; and on 01/17/2018 and 02/09/2018 as 175 lbs. On 02/23/2018, Nguien's weight dropped to 155 lbs. A month later (03/23/2018), he was back up to 175 lbs. On later visits, his weight

Genuine issues of material fact exist also which preclude summary judgment for the DOC Dietary Team (**Whitmyre, Tipton, Hilligross,** and **Gunby**).  It is not disputed that Nguien's food trays often contained foods to which he had confirmed allergies.  In February 13, 2018, Nguien notified both Defendant Tipton and Defendant Hilligross that his tray had beans on it.  According to Nguien, he was told, "the staff are doing their jobs, so take your tray and go.  If you have an issue write medical."  (ECF No. 303 at ¶ 49).  That day after the encounter with Defendants Tipton and Hilligross,  Defendant Whitmyre told Nguien he would contact Central Office about Nguien's food allergies not being fully addressed.  (*Id.* at ¶ 53).  And on more than one occasion Defendant Whitmyre told Nguien that SCI-Somerset followed his diet as approved by Central Office.  (ECF No. 303 at ¶¶ 105, 118). *See also id*. at ¶ 87 (Defendant Hilligross responding to ROS that the diet cooks have stated that Nguien was getting the foods called for by Central Office).

According to Nguien, in August 2018, when Defendant Gunby was made aware that Nguien's therapeutic diet tray continued to have beans on it, he told Nguien that he would talk to Defendant Whitmyre  to "help you get this ongoing issue resolve[d]."  (ECF No. 303 at ¶ 94).  On February 3, 2022, Nguien wrote a ROS to Dietary about receiving a tray with his name on it that contained lasagna, carrot cake, and biscuit.  In response, Defendant Gunby stated,

> Mr. Nguien, all diets received incentive meal and their diet tray!  We provide all inmates with the incentive meal so no one claims any unfair treatment.  If there is anything that you cannot have as an adult, you make the choice yourself not to consume anything harmful.  You (sic) welcome for the meal.

(ECF No. 308-1 at p. 100).

---

appears to remain steady at 175 lbs (03/30/2018, 07/05/2018, 08/08/2018, 01/25/2019, and 07/21/2019).

On July 22, 2020, in response to a ROS (Dietary) in which Nguien complained that his lunch and dinner trays two days earlier had contained foods which should have been excluded based on his therapeutic diet, Nguien was told,

> Due to a Zone switch the dietary had different inmates working the diet kitchen. No doubt there were probably some issues with your tray.  Our instructors have been monitoring the diets and when I look[ed] at your dinner tray tonight it was correct.  Any other issues let me know.

(ECF No. 308-1 at p. 78).

The Court acknowledges that the medical records and summary judgment record contains significant detail about Nguien medical treatment, tests were ordered in an attempt to diagnose him, he received extensive medical treatment and was prescribed various medications, lotions, and cremes, and modifications were made to his therapeutic diets.  However, the undisputed summary judgment record also reflects that the therapeutic diets that were ordered and approved often left off foods – foods which RAST tests confirmed Ngiuen had high levels of allergen results. There also was a two month delay from the time a RAST result showed high bean allergy to the time when Nguien's diet was modified to eliminated legumes/beans.  Similarly, there was an eighteen month delay between the time Nguien was seen for a rash after reportedly touching a small amount of peanut butter, and the time peanuts were eliminated from his diet. The record also reflects that Nguien repeatedly complained that his food trays contained foods that were not in compliance with his approved therapeutic diet.

To be sure, the summary judgment record reflects Nguien received extensive medical treatment.  But the fact that there remained consistent problems with his therapeutic diet orders and his food trays is troubling.  Viewing all facts in the light most favorable to Nguien, the Court finds that there are a number of facts from which a jury could conclude that **DOC Defendants**

**Gordan, Whitmyre, Tipton, Hilligross, Gunby, Cosimato, and Justin LNU and individual Medical Defendants Delisma, Johnston, and Playso** acted with deliberate indifference.  Thus, summary judgment will be denied as to these defendants.

However, the same cannot be said with regard to **DOC Defendant Gerald Puskar, RN and Medical Defendant Ellis Kaufman, PA.**  Defendant Puskar saw Nguien only on one day, January 5, 2018.  (Third Amended Complaint, ¶¶ 28 – 30).  During that visit, Nguien told Defendant Puskar he was allergic to tomatoes, red sauce, potatoes, soy beans, legumes, onions, dairy and lactose restricted.  He also told Defendant Puskar that his current diet pass was not fully addressing his food allergy needs.  At that time, Nguien's approved diet was no soy and lactose restricted. (ECF No. 291-1 at pp. 297-98).  Defendant Puskar discussed with Nguien his approved diet.  The undisputed summary judgment reflects that therapeutic diets can be prescribed <u>only</u> by a physician, psychiatrist, dentist, physician assistant, or nurse practitioner, <u>not</u> registered nurses such as Defendant Puskar.  Nguien presents no evidence that Defendant Puskar had the ability to override the existing order for his therapeutic diet.  A reasonable jury could not find in his favor as to his claim against Defendant Puskar.  Thus, summary judgment will be granted to **Defendant Puskar**.

The medical record evidence indicates that although **Medical Defendant Ellis Kaufman, PA,** examined Nguien on a number of occasions for inter alia itching over his legs, feet, and arms, rash on legs, complaints of pain due to broken ribs, and suturing injuries sustained in a fall.  Nguien requested that Defendant Kaufman order diapers for him on a number of occasions, but it was determined that Nguien did not need diapers based on a medical necessity.  The only evidence of Defendant Kaufman requesting a diet modification / continuation, occurred on 03/12/2020, when Defendant Kaufman requested a "diet continuation" which eliminated all

foods to which Nguien had allergies. *See* ECF 291-1 at p. 51, 3/12/2020 diet continuation order requested by Ellis Kaufman.    The Court finds that Nguien has presented no evidence from which a reasonable jury could find that Defendant Kaufman acted with deliberate indifference. Thus, summary judgment will be granted to **Defendant Kaufman**.

### e.  Correct Care Solutions ("CCS")

To succeed on his claim against **CCS**, Nguien must present evidence sufficient to permit a factfinder to conclude that the individual Medical Defendants' alleged deliberate indifference can be attributed to CCS. *Parkell v. Danberg*, 833 F.3d 313, 338 (3d Cir. 2016). To that end, Nguien alleges that CCS failed to intervene once it was informed of the risk of harm to Nguien's health and safety if his dietary needs remained unattended to or unaccommodated.   Third Amended Complaint, at ¶¶ 170-72.

CCS requests summary judgment arguing that while its contracted duties require its clinicians to request non-standard diets for inmates with food allergies, it is <u>not</u> responsible for developing menus to meet inmates' dietary needs, overseeing the therapeutic diet program within the prison, or ensuring that inmates receive meals in compliance with their particular diets.

There is no evidence in the record to suggest that the actions of the individual clinicians employed by CCS resulted from the absence of a CCS policy or could be attributed to CCS in any way.   Moreover, there is also no evidence that CCS leadership was aware of any issues regarding the individual Medical Defendants failing to request / approve a complete therapeutic diet or treating Nguien's ongoing medical needs. Under these circumstances, as in *Parkell*, there is no evidence that CCS "turned a blind eye to an inadequate practice happening on its watch." *Parkell*, at 833 F.3d at 340.   The evidence viewed in the light most favorable to Nguien as the nonmoving party, therefore, fails to establish the CCS acted with the requisite degree of

deliberate indifference to support liability under the Eighth Amendment. Thus, the motion for summary judgment filed on behalf of **CCS** to Nguien's Eighth Amendment claim will be granted.

### 3. Medical Malpractice against the Medical Defendants[29]

Nguien also brings a Pennsylvania state law claim of medical practice against the Medical Defendants. The malpractice inquiry differs from that under the Eighth Amendment in that it does not require a showing a deliberate indifference to medical needs. Rather, under

---

[29] Nguien's filings in opposition to summary judgment, sound as though he may be attempting to assert a state tort claim against the DOC defendants for negligence. Under the Pennsylvania Tort Claims Act, the DOC individual defendants are immune to the same extent that their employing entity is immune. 42 Pa.C.S. § 8545. "This immunity is abrogated, with respect to individuals only, for conduct constituting a crime, actual fraud, actual malice or willful misconduct." *Robbins v. Cumberland Cty. Children & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002) (citing *Diaz v. Houck*, 632 A.2d 1081, 1085 (Pa. 1993)); 42 Pa.C.S. § 8550. "[T]o prove willful misconduct, it must be shown that the actor desired to bring about the result that followed, or at least it was substantially certain to follow." *Diaz*, 632 A.2d at 1084-8. "Willful misconduct' in this context 'has the same meaning as the term 'intentional tort'." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (citing *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995)). Therefore, "even where a public employee acts with a degree of culpability equivalent to 'recklessness,' Pennsylvania law nevertheless affords [the public employee] immunity. *Bright v. Westmoreland Cty.*, 443 F.3d 276, 287 (3d Cir. 2005) (quoting *Williams v. City of Philadelphia*, 569 A.2d 419, 421-22 (Pa. 1990)). For this reason, "evidence which demonstrates deliberate indifference fails to establish the type of willful misconduct necessary to pierce [Tort Claims Act] immunity." *Vicky M. v. Ne. Educ. Intermediate Unit*, 689 F. Supp. 2d 721, 741 (M.D.Pa. 2009) (citing *Bright*, 443 F.3d at 274, 287); *see also M.U. v. Downington High Sch. E.,* 103 F. Supp.3d 612, 631 (E.D.Pa. 2015) ("This level of culpability is even higher than that required to state a plausible § 1983 claim."); *Owens v. City of Philadelphia,* 6 F. Supp.2d 373, 395 (E.D.Pa. 1998) ("The record would permit a reasonable fact-finder to reach the conclusion that the officers acted with "deliberate indifference" – as used in the federal constitutional cases – but that is a standard which falls short of intent to cause harm[.]").

Although **DOC Defendants Hyde, Gordon, Whitmyre, Tipton, Hilligross, Gunby, Cosimato, and Justin LNU** are not entitled to summary judgment on Nguien's deliberate indifference claims because a disputed issue of material fact exists as to whether they acted with disregard to a substantial risk of harm, *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013) (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009), their actions do not rise to the level of an intentional tort under Pennsylvania law.

Pennsylvania law in order to establish a cause of action for negligence, Nguien must prove the following elements: (1) duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection between the conduct and plaintiff's resulting injury; and (4) actual damages suffered by the plaintiff. *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997)). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

Furthermore, in order to present a prima facie case of medical negligence under Pennsylvania, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recover is sought." *Simpson v. Bureau of Prisons*, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005). This requirement is imposed upon malpractice plaintiffs by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing of a valid certificate of merit along with any malpractice or medical negligence claim. *Njos v. United States*, No. 3:14-cv-1960, 2017 WL 3224662, at *7 (M.D.Pa. June 22, 2017), *report and recommendation adopted*, 2017 WL 3217725 (M.D.Pa. July 28, 2017). The requirement stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. *Brannan v. Lankenau Hospital*, 417 A.2d 196 (Pa. 1980). *See also Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 480 (3d Cir. 1979) (adopting Pennsylvania's requirement for expert testimony in legal malpractice actions).

The only exception to the requirement of expert witness testimony in medical malpractice claims is where the matter is "so simple, and lack of skill or want of care so obvious, as to be

within the range of ordinary experience and comprehension of even nonprofessional persons." *Brannon,* 417 A.2d at 196. Nguien has submitted certificate of merits stating no expert testimony is necessary "for prosecution of the claim(s) against" Dr. Kansky Delisma, Ellis Kaufman, Roxanne Playso and Correct Care Solutions. *See* ECF Nos. 92-94, inclusive.[30]

Here, the issues in the case are not of the nature or type that necessitate the need for expert testimony because whether or not the individual Medical Defendants requested or approved therapeutic diets that included all of Nguien's confirmed allergies is not "beyond the trier-of-fact's ability to adequately understand . . . ." *Ford v. Mercer County Correctional Ctr.*, 171 F. App'x 416, 420 (3d Cir. 2006) (quoting Federal Practice and Procedure:  Evidence  § 6304 (1997)).

Therefore, summary judgment will be denied on Nguien's medical malpractice claim against the **Medical Defendants Delisma, Johnston, and Playso**.  However, the Court finds that the evidence, viewed in the light most favorable to Nguien as the nonmoving party, fails to establish that either **CCS or Medical Defendant Kaufman** acted in any manner which would support a negligence claim.   Therefore, summary judgment will be granted to CCS on this claim.

#### 4.      Intentional Infliction of Emotional Pain

The individual Medical Defendants argue that Nguien alleges no facts from which a reasonable factfinder could find that these individuals acted with outrageous and extreme conduct towards Nguien.  Because the Court has decided that genuine issues of material fact

---

[30]      Somewhat confusingly, Nguien has attached to his "Objection to Defendant's Summary Judgment," a Certificate of Merit signed and completed by Kristi Nguyen, a licensed registered nurse.  Also attached to this document are Certificates of Merit signed by "Samer Nachawati, Doctor of Osteopathic Medicine" and "Johnny Nguyen, a licensed registered nurse," but neither of these two Certificates appear to be complete.  *See* ECF No. 307.

exist which prevent summary judgment from being entered in favor of **Medical Defendants Delisma, Johnston, and Playso**, this claim is best left to the fact-finder to decide.

## VI.     CONCLUSION

For the foregoing reasons, each of the pending Motions for Summary Judgment will be granted in part and denied in part.   An appropriate Order follows.

Date: March15, 2023                                          /s Cynthia Reed Eddy
                                                             Cynthia Reed Eddy
                                                             United States Magistrate Judge


cc:     **ANTHONY NGUIEN**
        NC-2764
        SCI COAL TOWNSHIP
        1 Kelley Drive
        Coal Township, PA 17866
        (via U.S. First Class Mail)

        All Counsel of Record
        (via ECF email notification)